Kenneth **JERNIGAN**

v.

Shirley S. **CHATER, Commissioner of Social Security**

Civil No. B–94–2583.

United States District Court, D. Maryland.

Aug. 7, 1997.

Dallas K. Mathis, Arlington, VA, William C. Gleisner, III, of Milwaukee, WI, for plaintiff.

William Reeser, Assistant Regional Counsel, Social Security Administration of Philadelphia, PA, Allen F. Loucks, Assistant United States Attorney, Baltimore, MD, for defendant.

WALTER E. BLACK, Jr., Senior District Judge.

Presently pending before the Court are Defendant's Objections to the Magistrate Judge's Report and Recommendation, filed on behalf of defendant, Shirley S. Chater, Commissioner of Social Security ("the Commissioner"). The underlying cause of action involves a challenge by plaintiff Kenneth Jernigan to the Commissioner's calculation of the amount of disability insurance benefits ("DIB") to which Jernigan is entitled under Title II of the Social Security Act (the "Act"). The parties filed cross-motions for summary judgment, and on April 4, 1996, the magistrate judge issued a Report and Recommendation recommending that this Court reverse the Commissioner's computation of Jernigan's monthly DIB.

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5.b., the district court shall make a *de novo* determination as to those portions of the magistrate judge's proposed findings and recommendations to which specific objections are made.

I.

The facts of this case can be simply stated. Jernigan was born on November 13, 1926, and has been statutorily blind since birth. He was awarded a period of disability ("POD") beginning April 1, 1952, pursuant to 42 U.S.C. § 416(i)(1) ("[T]he term 'disability' means ... (B) blindness; and the term 'blindness' means central visual acuity of 20/200 or less in the better eye with the use of a correcting lens."). However, because Jernigan performed work constituting "substantial gainful activity" during the period between 1958 and October 31, 1989, he did not become entitled to DIB under 42 U.S.C. § 423 during this period. On November 6, 1989, Jernigan applied for DIB.

II.

Because Jernigan became entitled to DIB prior to being eligible for old-age insurance benefits, his DIB was to be calculated based on his "primary insurance amount" ("PIA"), pursuant to 42 U.S.C. § 423(a)(2). There are two major methods for calculating a worker's PIA. If, prior to 1979, the worker reached age sixty-two, became disabled, or died, then his PIA is computed under the average-monthly-wage ("AMW") method. 20 C.F.R. § 404.204(b)(2).[1] If none of these events occurred prior to 1979, then the worker's PIA is computed under the average-indexed-monthly-earnings ("AIME") method. 20 C.F.R. § 404.204(b)(1). The Commissioner must determine Jernigan's benefit amount to be "the highest of all those computed under the methods for which [he is] eligible." 20

1. The Commissioner states in her briefs that the AMW method is employed when a beneficiary is "eligible for a DIB, reaches age sixty-two, or dies in a month before January 1979." This language, which derives from terms used in 42 U.S.C. § 415(a)(3)–(5), is different from the language used in 20 C.F.R. § 404.204(b)(2); while the statute refers to a beneficiary who was "eligible for a DIB" before 1979, the regulation requires only that the beneficiary "became disabled" before 1979. At oral argument, the Commissioner's attorney conceded that the Commissioner is bound by the language of the regulation. For this reason, and for the additional reason that the phrase "eligible for a DIB" is not clearly defined in the statute, the Court will rely on the regulatory language in resolving the disputed issues in this case.

C.F.R. § 404.204(a). Under the AIME method, Jernigan's DIB computes to approximately $951.40.

Jernigan seeks to have his benefit computed using the AMW "inclusion" method so that his earnings during his POD can be considered in determining his PIA. The Commissioner contends, however, that in applying the AMW method to calculate his PIA, Jernigan's earnings during his POD must be excluded. This issue is of substantial importance, since while the AMW exclusion method yields a PIA of only $231.90, the AMW inclusion method yields a PIA of approximately $1300.

The Act provides that "for purposes of computing the primary insurance amount (after December 1978) of an individual to whom [the AIME method] does not apply . . ., this section as in effect in December 1978 shall remain in effect." 42 U.S.C. § 415(a)(5)(A). Thus, in applying the AMW method, the Court must refer to 42 U.S.C. § 415(b) as in effect prior to January 1979.[2]

The parties agree that application of this section without reference to 42 U.S.C.

§ 420—the disability savings clause ("savings clause")—results in a PIA unfavorable to Jernigan.[3] The parties also agree, however, that the AMW calculation must be made in accordance with § 420, which provides as follows:

> None of the provisions of this subchapter relating to periods of disability shall apply in any case in which their application would result in the denial of monthly benefits or a lump-sum death payment which would otherwise be payable under this subchapter; nor shall they apply in the case of any monthly benefit or lump-sum death payment under this subchapter if such benefit or payment would be greater without their application.

42 U.S.C. § 420. Moreover, the parties agree that, pursuant to this savings clause, the limiting provisions of § 415(b) are to be disregarded.

The issue in dispute is whether this savings clause can negate the limiting provisions of section 415(b) without also eliminating Jernigan's entitlement to an AMW calculation. The Commissioner contends that the savings provision must be interpreted in an "all or

---

**2.** The relevant portion of § 415(b) in effect at that time provides, in pertinent part, as follows:

(b) *Average monthly wage*

(1) For the purposes of column III of the table appearing in subsection (a) of this section, an individual's "average monthly wage" shall be the quotient obtained by dividing—

(A) the total of his wages paid in and self-employment income credited to his "benefit computation years" (determined under paragraph (2)), by

(B) the number of months in such years.

(2)(A) The number of an individual's "benefit computation years" shall be equal to the number of elapsed years (determined under paragraph (3) of this subsection), reduced by five; except that the number of an individual's benefit computation years shall in no case be less than two.

(B) An individual's "benefit computation years" shall be those computation base years, equal in number to the number determined under subparagraph (A), for which the total of his wages and self-employment income is the largest.

(C) For purposes of subparagraph (B), "computation base years" include only calendar years in the period after 1950 and prior to the earlier of the following years—

(i) the year in which occurred (whether by reason of section 402(j)(1) of this title or otherwise) the first month for which the indi-

vidual was entitled to old-age insurance benefits, or

(ii) the year succeeding the year in which he died.

Any calendar year all of which is included in a period of disability shall not be included as a computation base year.

(3) For purposes of paragraph (2), the number of an individual's elapsed years is the number of calendar years after 1950 (or, if later, the year in which he attained 21) and before the year in which he died, or if it occurred earlier but after 1960, the year in which he attained 62. For purposes of the preceding sentence, any calendar year any part of which was included in a period of disability shall not be included in such number of calendar years.

42 U.S.C. § 415(b) (1976 Ed.).

**3.** The restrictive provisions of § 415(b) are those that limit the terms "computation base years" and "elapsed years" such that they do not encompass any calendar year all of which was included in a POD. In Jernigan's case, all the years from 1953 to 1989 were entirely within his POD. Accordingly, after applying § 415(b) Jernigan is left with only two "computation base years"—1951 and 1952—from which his earnings can be considered in calculating his PIA. Jernigan's earnings during 1951 and 1952 result in a PIA in the amount of only $231.90.

nothing" fashion. Under this interpretation, a beneficiary would be required to choose either all of the effects or none of the effects of a POD on that individual's entitlement. According to the Commissioner, this "all or nothing" interpretation dictates that if Jernigan's POD is disregarded for purposes of calculating his PIA, it must also be disregarded for purposes of choosing the AMW method of calculation. Thus, the Commissioner concludes that the effect of the savings clause is to apply the AIME method, which disregards Jernigan's POD but takes into consideration the wages he earned during his POD.

Jernigan argues that the savings clause must ensure the highest possible benefit computation, which in this case occurs through the AMW inclusion method, rather than through the AMW exclusion method or the AIME method. According to Jernigan, the Commissioner's "all or nothing" approach ignores the context of the Act and regulations, wherein choice in computation methods was provided to ensure that beneficiaries would receive the highest possible benefit under the many, ever-changing methods of computation employed by the Social Security Administration. Jernigan further contends that any other result would penalize him for his determination to pursue an active professional life despite his impairment.

### III.

The scope of judicial review of an administrative decision is limited to whether the ALJ's decision was supported by substantial evidence. 42 U.S.C. § 405(g); *Richardson v. Perales,* 402 U.S. 389, 390, 91 S.Ct. 1420, 1422, 28 L.Ed.2d 842 (1971); *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir.1990); *Coffman v. Bowen,* 829 F.2d 514, 517 (4th Cir. 1987). "Substantial evidence" is defined as evidence which " 'a reasonable mind might accept as adequate to support a conclusion.' " *Richardson,* 402 U.S. at 401, 91 S.Ct. at 1427 (quoting *Consolidated Edison Co. of New York v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman,*

829 F.2d at 517 (citing *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir.1980)).

The magistrate judge determined that the Commissioner's decision was based on an error of law requiring reversal. Specifically, he recommended that the Court reject the Commissioner's "all or nothing" interpretation as violative of the savings clause, and conclude that application of the savings clause permits an inclusive AMW calculation.

This Court finds that applying the savings clause in an "all or nothing" fashion is consistent with the plain wording of the clause and is therefore reasonable and entitled to deference. The Court does not adopt the magistrate judge's Report and Recommendation insofar as it is inconsistent with this determination. Nevertheless, the Court also finds that in determining that Jernigan is not entitled to an inclusive AMW calculation, the Commissioner misapplied this "all or nothing" interpretation. Accordingly, the Court adopts and affirms the magistrate judge's ultimate recommendation.

■ The "all or nothing" interpretation of the savings clause is rooted in the language of § 420, which provides, in pertinent part, that *"[n]one of the provisions . . . relating to periods of disability shall . . . apply in the case of any monthly benefit . . . if such benefit . . . would be greater without their application."* 42 U.S.C. § 420 (emphasis added). "It is an axiom of statutory construction that courts are obliged to give effect, if possible, to every word used by the legislature." *In re Kitchin Equip. Co. of Virginia, Inc.,* 960 F.2d 1242, 1247 (4th Cir.1992). In this case, the most reasonable way to give effect to every word in § 420 is to apply the savings clause to render inapplicable each provision in the Act "relating to periods of disability." The Court adopts this interpretation. Logic dictates that the Court adhere as well to the converse of this principle. Thus, the Court also concludes that § 420 does not render inapplicable provisions in the Act that do not relate to periods of disability.

The Court must next determine whether the statutory provisions at issue here relate to periods of disability. As is stated above, it is undisputed that the limiting provisions of

§ 415(b) relate to periods of disability. Indeed, these precise terms appear twice in § 415(b). *See* 42 U.S.C. § 415(b)(2)(C) ("Any calendar year all of which is included in a period of disability shall not be included as a computation base year."); 42 U.S.C. § 415(b)(3) ("[A]ny calendar year any part of which was included in a period of disability shall not be included in such number of calendar years.").

The Commissioner argues that § 416(i)(2) "relates to the establishment of a POD" and is thus a provision relating to periods of disability that must be disregarded in applying the savings clause. Even if the Commissioner is correct in this regard, this would not affect Jernigan's entitlement to an AMW calculation, since Jernigan invocation of an AMW calculation is established not by § 416(i)(2), but rather by § 416(i)(1).

■ Section § 416(i)(1) provides a definition of the term "disability." This section is important to Jernigan because it is his only means of invoking an AMW calculation. Without it, he would not be considered to be disabled under the Act since he does not meet the stringent definition of disability set forth in 42 U.S.C. § 423(d), and he would not qualify for an AMW calculation since he does not meet the other qualifying grounds set forth in 20 C.F.R. § 404.204(b)(2). The Court finds that section 416(i)(1) is nothing more than a definitional section; while this section relates to the term "disability" insofar as it defines the term, it makes no mention of "periods of disability." Moreover, the fact that a potential beneficiary must become disabled before he can establish a POD is indicative of a required order to these events, but this relationship is far too tenuous to transform a definitional section such as § 416(i)(1) into a provision "relating to periods of disability." Accordingly, application of the savings clause does not require the Court to disregard § 416(i)(1).

Because the effect of the savings clause is to permit Jernigan to disregard the limiting provisions of § 415(b) while still entitling him to invoke the definition of disability contained in § 416(i)(1), Jernigan may utilize an inclusive AMW calculation. The Commissioner's decision to the contrary was reached by means of a misapplication of the savings clause, and must therefore be reversed.

For all of the foregoing reasons, the Court adopts the Report and Recommendation of the magistrate judge, subject to the findings in this Opinion, grants Jernigan's Motion for Summary Judgment, denies the Commissioner's Motion for Summary Judgment, reverses the decision of the Commissioner, and remands this case to the Commissioner, who shall compute Jernigan's benefits in accordance with the Court's Opinion and shall award Jernigan the benefits to which he is entitled.

## ORDER

In accordance with the Opinion filed today in the above-captioned case, IT IS, this 7th day of August, 1997, by the United States District Court for the District of Maryland,

ORDERED:

(1) That the Report and Recommendation of United States Magistrate Judge James E. Kenkel BE, and the same hereby IS, ADOPTED and AFFIRMED subject to the comments in the Opinion;

(2) That Plaintiff's Motion for Summary Judgment (Paper 17), filed on behalf of Kenneth Jernigan, BE, and the same hereby IS, GRANTED;

(3) That the Motion for Summary Judgment (Paper 23), filed on behalf of defendant Shirley S. Chater, Commissioner of Social Security BE, and the same hereby IS, DENIED;

(4) That JUDGMENT BE, and the same hereby IS, ENTERED in favor of plaintiff Kenneth Jernigan against defendant Shirley S. Chater, Commissioner of Social Security; and

(5) That the decision of defendant Shirley S. Chater, Commissioner of Social Security BE, and the same hereby IS, REVERSED;

(6) That this case BE, and the same hereby IS, REMANDED to defendant, who shall recompute plaintiff's benefits in accordance with the Court's Opinion and shall award plaintiff the benefits to which he is entitled; and

(7) That the Clerk shall mail a copy of this Order and the accompanying Opinion forthwith to counsel of record.