**Richie R. WILSON, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of Social Security, Defendant.**

#### No. 1:98CV00108.

United States District Court,
W.D. Virginia,
Abingdon Division.

Jan. 21, 2000.

Charles Cooper Geraty, III, Geraty, MacQueen & Vitt, Charlottesville, VA, for Plaintiff.

Julie C. Dudley, U.S. Attorney's Office, Roanoke, VA, for Defendant.

## OPINION

JONES, District Judge.

In this social security case, the issue is whether the amount allocated in the plaintiff's workers' compensation settlement for future rehabilitation services should be offset from his social security disability award. Based on the facts of this case, I hold that such an offset is not justified. Accordingly, I grant the plaintiff's objections to the magistrate judge's report and reverse the decision of the Commissioner.

### I. BACKGROUND.

Richie R. Wilson challenges the final decision of the Commissioner of Social Security ("Commissioner") reducing his disability insurance benefits under title II of the Social Security Act ("Act"), 42 U.S.C.A. §§ 401–433 (West 1991 & Supp. 1999). This court has jurisdiction under 42 U.S.C.A. § 405(g).

Wilson suffered a work-related back injury on July 2, 1992. On August 23, 1994, the Virginia Workers' Compensation Commission entered an order approving a settlement of Wilson's compensation claim. The settlement provided for a payment to

Wilson of the lump-sum amount of $60,000. Of this amount, the settlement explicitly provided that $9,000 be allocated to attorney's fees, with the remaining $51,000 to be apportioned as follows: "one-third (⅓) for relinquishment of weekly cash compensation benefits, one-third (⅓) for relinquishment of lifetime medical benefits after eighteen (18) months from the date the settlement Order is entered, and one-third (⅓) for relinquishment of further rehabilitation services." (R. at 29.) The settlement order also provided that "the wage earner reserves the right to designate to the Social Security Administration any other allowable formulation which might otherwise be in his best interest." (*Id.*)

Thereafter, the Social Security Administration ("SSA") sent Wilson a notice of award letter.[1] In this letter, the SSA advised Wilson that $29,000 of the legal, medical, and other expenses would not be considered in the calculation of his benefits, while the remaining $31,000 would reduce his benefits.[2] There is no indication in the letter of how these amounts were determined.[3] Upon Wilson's request for reconsideration of this decision, the SSA affirmed.

Wilson then requested a hearing before an administrative law judge ("ALJ"). By a decision dated November 15, 1996, the ALJ held that the amount in the settlement order apportioned for the legal fees, future medical costs, and future rehabilitation costs could not be used to offset his disability insurance benefits (a total of $43,000). The remaining $17,000, representing the relinquishment of weekly bene-fits, was to be subtracted from the benefits Wilson received under the Act.

The ALJ held that the right to rehabilitation services did not create a benefit that is periodic in nature, so the portion of the lump-sum settlement attributable to these services could not be used to offset Wilson's disability benefits. Further, the ALJ found that $17,000 was a reasonable substitute for future rehabilitation. The ALJ based the determination that $17,000 was reasonable on the evidence of an expert in rehabilitation counseling. This expert opined that "it would be very possible, and in fact likely, that vocational rehabilitation services provided to Mr. Wilson would cost $17,000 or more over his worklife expectancy...." (R. at 71.)

Over a year later, the SSA's Appeals Council sua sponte reopened the decision by a March 23, 1998, letter to Wilson. In this letter, the SSA notified Wilson that the Appeals Council intended to issue a revised decision finding that the $17,000 apportioned to relinquishment of rehabilitation benefits in the settlement order would be used to reduce his social security benefits.[4]

By decision dated May 15, 1998, the Appeals Council did reverse the ALJ's decision, holding that the amount apportioned for rehabilitation was to be included in the offset of his disability insurance benefits. The Appeals Council included the rehabilitation amount in the offset because it found that there was no evidence that Wilson intended to use the settlement

---

1.  The final page of the letter, which presumably would have indicated the date, is not in the record. However, it appears that all of the relevant pages are included.

2.  Wilson was to receive less than the full amount of his benefits each week until the $31,000 had been taken into account. His benefits were thus to be "offset" by the workers' compensation award. *See* 42 U.S.C.A. § 424a.

3.  Attorney's fees ($9,000) and the amount apportioned for medical bills ($17,000) com-bined equal $26,000, while attorney's fees, the amount apportioned for medical bills, and the amount apportioned for rehabilitation ($17,-000) would equal $43,000.

4.  The government's contention that Wilson did not "preserve" his present arguments because he did not submit further evidence to the Appeals Council is without merit. The Appeals Council made its decision based on the same record that was before the ALJ, wherein Wilson's arguments were advanced.

amount for rehabilitation services. The Appeals Council held that the settlement order, which allowed the claimant to designate to the SSA any other allowable formulation in his best interest, suggested that the $17,000 was allocated to rehabilitation in order to minimize the offset and thus increase Wilson's social security benefits.

The Appeals Council's decision constituted the final decision of the Commissioner and this action by Wilson seeking review followed. The case was referred to United States Magistrate Judge Pamela Meade Sargent to conduct appropriate proceedings. *See* 28 U.S.C.A. § 636(b)(1)(B) (West 1993); Fed.R.Civ.P. 72(b). Magistrate Judge Sargent filed her report recommending affirmance of the decision of the Appeals Council on September 24, 1999. The magistrate judge found that there was substantial evidence that the $17,000 allocated for rehabilitation in the settlement order was really a substitute for periodic workers' compensation benefits and not vocational rehabilitation services. On October 8, 1999, Wilson filed timely written objections to the report.

## II. STANDARD OF REVIEW.

I must make a de novo determination of those portions of the report to which Wilson objects. *See* 28 U.S.C.A. § 636(b)(1)(C); Fed.R.Civ.P. 72(b). Under the Act, I must uphold the factual findings and final decision of the Commissioner if they are supported by substantial evidence and were reached through application of the correct legal standard. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir.1987). The plaintiff bears the burden of proving that a portion of the settlement is not a substitute for periodic payments. *See Meredith v. Apfel*, 51 F.Supp.2d 713, 717 (W.D.Va.1999).

The plaintiff asserts two objections to the magistrate judge's report. First, the plaintiff claims that the magistrate judge erred in determining that the court's review was limited to a question of fact and the appropriate standard was whether or not the Commissioner's determination was supported by substantial evidence. Instead, the claimant argues, the question was one of law, not constrained by substantial evidence review.

Second, the claimant objects to the magistrate judge's finding that substantial evidence supports the Commissioner's determination that the $17,000 at issue was paid as a substitute for periodic payments and was thus to be included in the calculation of the offset.

## III. ANALYSIS.

The Social Security Act requires a reduction in benefits when the sum of benefits paid under federal and state disability programs exceeds eighty percent of the claimant's average monthly earnings prior to his or her disability. *See* 42 U.S.C.A. § 424a(a). The purpose of this provision is to ensure that a claimant does not receive double benefits for the same injury, reducing his or her incentive to return to work. *See Justus v. Shalala*, 817 F.Supp. 29, 31 (W.D.Va.1993). To that end, the statute provides that if an individual is entitled to "periodic benefits on account of his or her total or partial disability ... under any ... law or plan of the United States, [or] a State," his or her social security benefits shall be reduced. 42 U.S.C.A. § 424a(a)(2). If a lump sum is "a commutation of, or a substitute for, periodic payments, ... the reduction under this section shall be made at such time or times and in such amounts as the Commissioner of Social Security finds will approximate as nearly as practicable the reduction prescribed." 42 U.S.C.A. § 424a(b). Thus, "periodic benefits," or a lump-sum settlement of "periodic benefits" will reduce social security payments.

Therefore, this case presents two questions. The first is whether or not amounts allocated to rehabilitation in a lump-sum settlement are "periodic benefits." This is a question of law. *See Allen v. Apfel*, 65

F.Supp.2d 391, 393 (W.D.Va.1999). The second question is whether or not the allocation of one-third of the settlement to rehabilitation was a sham, meant to circumvent the rule that periodic payments will reduce benefits. This is a question of fact, and the decision of the Commissioner will be upheld if it is supported by substantial evidence.

■ As a matter of law, payments for rehabilitative services are not "periodic,"and cannot be used to offset social security awards. *See Allen,* 65 F.Supp.2d at 394; *Campbell v. Shalala,* 14 F.3d 424, 427–428 (8th Cir.1994) (stating that "it seems clear that rehabilitation, retraining benefits, and death benefits are not periodic benefits within the meaning of section 424a." (footnote omitted)).

The Virginia workers' compensation statute entitles injured workers to three benefits: weekly compensation payments, free medical attention, and reasonable vocational rehabilitation services. *See* Va. Code Ann. §§ 65.2–500, 502, 603 (Michie Supp.1999). Clearly, the weekly compensation payments are periodic. However, the medical and rehabilitation payments are not periodic. Payments for rehabilitation are generally rendered as the services are needed, rather than at fixed and determined intervals. *See Allen,* 65 F.Supp.2d at 394. As the Appeals Council noted, "[e]xcluding the value of the vocational rehabilitation services received by a worker under a State's worker's compensation statute ... does not frustrate congressional intent or conflict with the purposes of the Social Security disability insurance program...." (R. at 7–8.)

■ The fact that the right to payment for rehabilitation was converted to a lump-sum settlement in this case does not change the nature of the underlying benefit. Just as a right to payment for medical services is not converted into a periodic benefit by virtue of a settlement, neither is the right to vocational rehabilitation. Therefore, a lump-sum settlement for future rehabilitation should be excluded from any offset of benefits under the Act.

■ The government argues that the Commissioner based his decision in this case on the SSA's Program Operations Manual System ("POMS"), and that because his decision is based on the POMS, it is entitled to persuasive authority. In this case, section DI 52001.025 of the POMS states that "[a]n amount set aside from a [workers' compensation lump-sum settlement] for rehabilitation, but not representing a bona fide, directed plan for specific services, is offsettable." (Def.'s Br. Supp. Def.'s Mot. Summ. J. Attach.) The POMS guidelines represent the Commissioner's interpretation of the governing statutes and regulations, and so are entitled to some deference. However, to the extent that the POMS conflicts with the statute and regulation at issue, it should not be followed. *See Bubnis v. Apfel,* 150 F.3d 177, 181 (2d Cir.1998). *Cf. Pass v. Chater,* 65 F.3d 1200, 1204 n. 4 (4th Cir.1995).

■ As to the second issue in the case, if the allocation in the settlement order is purely a sham, and the amount designated for rehabilitation actually represents a commutation of periodic benefits, the amount should be used to offset benefits. The question of whether or not the allocation in this case was a sham is one of fact, and the Commissioner's decision will be upheld if it is supported by substantial evidence. Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir.1966). If such evidence exists, my inquiry is terminated and the Commissioner's final decision must be affirmed. *See id.*

Although Wilson did not have outstanding rehabilitation bills, the regulations elaborating upon 42 U.S.C.A. § 424(a) contemplate that "a reasonable estimate, giv-

en the circumstances in the individual's case, of future expenses" for "medical, legal, or related expenses" should not reduce the amount of the social security award. 20 C.F.R. 404.408(d) (1999). Evidence that these awards are excludable may consist of a compromise agreement, court order, or "other evidence." *Id.* In this case, the reasonableness of the estimate is evidenced by the Virginia Workers' Compensation Commission order, as well as by the uncontroverted testimony of an expert on vocational rehabilitation.[5] The evidence presented here is sufficient to meet the claimant's burden of proof. *See Allen,* 65 F.Supp.2d at 394; *Meredith,* 51 F.Supp.2d at 716; *Justus,* 817 F.Supp. at 32.

This holding is consistent with *Meredith, Justus,* and *Allen,* all decisions from this court. In *Meredith,* there was no evidence that the large portion of the lump-sum settlement designated for rehabilitation and training was justified, and in fact it appeared unlikely that it would be used in such a manner. *See* 51 F.Supp.2d at 717.

In *Justus,* the settlement order issued by the Virginia Worker's Compensation Commission[6] allocated a set amount of the lump sum for attorney's fees, and did not make any further designation of the award. The court stated that, "[h]ad any part of the lump sum been intended for [unpaid medical bills and future medical expenses], the court has no doubt that the order would have so stated as it did in regard to the attorney's fees." 817 F.Supp. at 32. Thus, in *Justus,* the court relied on the language of the settlement order to determine the proper allocation of the settlement.

In *Allen,* one-third of the claimant's settlement award, less the attorney fee, was designated for "relinquishment of further rehabilitation services." 65 F.Supp.2d at 392. In addition, the settlement award provided that the claimant could designate

to the SSA any allowable formulation in his best interest. *See id.* An expert testified that the amount designated for rehabilitation was reasonable. *See id.* at 394. On these facts, which are strikingly similar to the facts here, the court found that the disputed issue was a question of law, and that the rehabilitative services amount qualified to be excluded from the calculation of the claimant's award under the Act. *See id.* at 394–95.

## IV. CONCLUSION.

In summary, because a lump-sum settlement for rehabilitation is not a periodic benefit and thus may not be used to reduce a claimant's benefits under the Act, and because there is not substantial evidence to support a contention that the amount designated for rehabilitation was in fact a substitute for periodic payments, the amount allocated to rehabilitation in the settlement order may not be used to offset the benefits Wilson is entitled to under the Act.

For these reasons, the plaintiff's objections to the report and recommendations of the magistrate judge will be sustained, the Commissioner's motion for summary judgment denied, and the final decision of the Commissioner reversed with directions that he not include the $17,000 allocated for rehabilitation in any reduction of benefits.

An appropriate final judgment will be entered.

---

6. The Commission was at that time called the Industrial Commission of Virginia. *See id.* at 30.