Raymond v. SSA                    CV-01-039-JD  05/23/02  P

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Cheryl Raymond

    v.                                    Civil No. 01-039-JD
                                         Opinion No. 2002 DNH 103
Jo Anne B. Barnhart, Commissioner,
Social Security Administration


O R D E R


Cheryl Raymond brings this action pursuant to 42 U.S.C.A. §
405(g) seeking judicial review of the decision by the
Commissioner of the Social Security Administration ("SSA") that
her Social Security Disability Income ("SSDI") benefits under
Title II of the Social Security Act have not been underpaid.
Raymond contends that her benefits during her second period of
disability have been underpaid because the Commissioner in
calculating her benefits improperly excluded her earnings from
her first period of disability.  The Commissioner moves to affirm
the decision.


Background

Cheryl Raymond was born in 1956.  She was first determined
to be disabled, due to bilateral deafness and poor speech
discrimination, for purposes of SSDI on January 1, 1981, when she
was twenty-five years old.  Raymond had earnings from work in

1984 and 1985. She returned to work in February of 1987, which ended her first period of disability. Her second period of disability began in December of 1987 when she stopped working. She has remained disabled since that time.

Raymond's eligibility and benefits were calculated differently for each period of disability.[1] During her first period of disability, from 1981 until 1987, she received coverage under special social security rules for younger individuals who become disabled before reaching age thirty-one, and she received a minimum monthly benefit. Raymond was found to be eligible for her second period of disability beginning in July of 1991, after she reached the age of thirty-one. In 1993, the SSA terminated Raymond's benefits temporarily. When her benefits were reinstated, the amount had been reduced by $171.70 per month. The Commissioner determined that Raymond's benefit level had been erroneously calculated by including earnings she received during her first disability period in 1984 and 1985. The reduction occurred when Raymond's benefits were recalculated using the SSA's Program Operations Manual System (POMS) which excludes earnings from a first period of disability established under

---

[1]Since Raymond's receipt of benefits while she was working and her contact with the SSA in 1988 are not relevant to the issue presented here, those circumstances are omitted from the background information.

special status requirements from the benefits calculation for a second period of disability.

Raymond sought reconsideration of the decision, which was denied. A hearing before an Administrative Law Judge ("ALJ") was held on October 20, 1998. She argued that her benefits had been underpaid because she contacted the Social Security Administration ("SSA") in 1988 and that contact should have been deemed to be a protective filing date, making her eligible for benefits before July of 1991. The ALJ concluded that the 1988 contact with the SSA did not change Raymond's application date because she was not given misinformation at that time. The Appeals Council denied review on December 4, 2000.

## Discussion

The parties agree that the only issue for review is "whether, with respect to a 'younger' individual, such as plaintiff, who has two periods of disability, the first of which commenced prior to age 31, and the second commenced on or after age 31, earnings from the first period of disability can be combined with earnings from the second period of disability to result in a higher benefit level for the individual." Joint Statement ¶ 20. Since that issue was not presented to the ALJ or the Appeals Council, but instead was raised for the first time in

3

this proceeding, no underlying decision on the issue exists for review.  See Sims v. Apfel, 530 U.S. 103, 107-08 (2000) (issue exhaustion not a prerequisite for judicial review pursuant to § 405(g)).

The parties also agree that no statute or regulation directly controls whether or not earnings from a first period of disability, before age thirty-one, may be considered for determining the level of benefits in a second period of disability, after age thirty-one.  The parties do not provide any detailed explanation as to how Raymond's benefits were calculated.  Thus, while the issue may be simply stated, its resolution requires a foray into the labyrinth of social security laws and regulations in which clarity is noticeably absent.

The statutes and regulations provide two alternative means for establishing coverage.  The "normal" rule is based on the number of covered quarters within forty quarters prior to the onset of disability.  See 42 U.S.C.A. § 423(c)(1)(B)(i); 20 C.F.R. § 404.130(b).  The "special" rule, applicable to claimants, like Raymond, who are less than thirty-one years old during their first period of disability and more than thirty-one at the onset of their second period of disability, computes covered quarters under a different analysis.  See 20 C.F.R. § 404.130(d).  The Commissioner does not count any quarter that is

4

part of a prior period of disability for determining insured status unless "by doing so [the claimant] would be entitled to benefits or the amount of the benefit would be larger." § 404.130(f).

The Commissioner computes a claimant's primary insurance amount as the first step in calculating the monthly benefit. See 20 C.F.R. § 404.201. The primary insurance amount is computed under one of two major methods or under a special method, which are set out in the regulations. See 20 C.F.R. § 404.203. In general, the Commissioner uses earnings within prior periods of disability in the calculation only if the "primary insurance amount would be higher by using the disability years." 20 C.F.R. § 404.211(a)(2); see also 20 C.F.R. §§ 404.204(c)(4) & 404.252. In addition, if the special minimum primary insurance amounts are higher that those calculated under the rules, the Commissioner uses the special amounts. See 20 C.F.R. § 404.260.

In Raymond's case, the Commissioner relied on POMS sections RS 00301.147 and RS 00605.220 to support her decision to exclude Raymond's earnings during her first period of disability from the calculation of her benefits for her second period of disability. The Commissioner contends that the POMS sections are entitled to deference. Raymond argues that no deference is due and that the POMS sections are contrary to the savings statute, 42 U.S.C.A. §

5

420, and the social security regulation for determining disability insured status, 20 C.F.R. § 404.130(f).

The POMS is not a regulation enacted pursuant to formal rulemaking procedures and therefore does not have binding legal force. Schweiker v. Hansen, 450 U.S. 785, 789 (1981). The Social Security Administration's less formal interpretation of a social security statute or its own regulation may be entitled to deference, pursuant to Chevron U.S.A, Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843-45 (1984), in appropriate circumstances. Barnhart v. Walton, 122 S. Ct. 1265, 1271-72 (2002); see also Auer v. Robbins, 519 U.S. 410, 461 (1997). Factors pertinent to determining whether Chevron deference may apply include "the interstitial nature of the legal question, the related expertise of the Agency, the importance of the question to administration of the statute, the complexity of that administration, and the careful consideration the Agency has given the question over a long period of time." Id. at 1272.

As noted above, the parties agree that the social security statutes and regulations do not address the issue presented here. The cited POMS sections are used to fill a gap in the statutory and regulatory framework for the complex process of determining eligibility for and the amount of benefits. The sections interpret 1983 amendments to the Social Security Act, and

6

therefore appear to be longstanding.  Although the parties have not addressed the applicable factors, the circumstances suggest that the POMS sections are subject to the Chevron analysis.  See also McNamar v. Apfel, 172 F.3d 764, 766 (10th Cir. 1999) (holding different POMS sections entitled to controlling weight unless arbitrary or capricious); Bubnis v. Apfel, 150 F.3d 177, 181 (2d Cir. 1998) (holding different POMS sections entitled to substantial deference); Wilson v. Apfel, 81 F. Supp. 2d 649, 653 (W.D. Va. 2000) (same).

Under a deferential analysis, if "the statute 'is silent or ambiguous with respect to the specific issue,' we must sustain the Agency's interpretation if it is 'based on a permissible construction' of the Act."  Walton, 122 S. Ct. at 1269 (quoting Chevron, 467 U.S. at 843).  A permissible construction is one that is fully consistent with the plain meaning of the applicable statutes and legislative history.  See Griffiths v. I.N.S., 243 F.3d 45, 53 (1st Cir. 2001).  Therefore, courts "must defer to reasonable agency interpretation and implementation" of the legal framework.  Becker v. Fed. Election Comm'n, 230 F.3d 381, 390 (1st Cir. 2000).

POMS RS 00301.147 and RS 00605.220, relied on by the Commissioner to support the calculation of Raymond's benefits, provide that time within a period of disability before the age of

7

thirty-one is not counted to determine insured status for a second period of disability after age thirty-one and that base years for "DIB PIA'S" do not include years within a period of disability.[2] The Commissioner contends that the POMS policy to disregard earnings from a prior period of disability established under special insured status requirements, which is not provided in any statute or regulation, is an implementation of the SSA's longstanding interpretation of the savings statute. The savings statute, 42 U.S.C.A. § 420, provides as follows:

> None of the provisions of this subchapter relating to periods of disability shall apply in any case in which their application would result in the denial of monthly benefits or a lump-sum death payment which would otherwise be payable under this subchapter; nor shall they apply in the case of any monthly benefit or lump-sum death payment under this subchapter if such benefit or payment would be greater without their application.

The Commissioner emphasizes the word "None" in the statute. Based on "None," the Commissioner interprets the statute in an "all or nothing fashion," meaning that if a provision requires that a period of disability be disregarded for any purpose, then that period must also be disregarded for all other purposes including calculating benefit levels.

The cited POMS sections make the "all or nothing" policy

---

[2]"DIB PIA" is not defined or explained by the parties. Taken in context, it is understood to mean:  disability insurance benefits primary insurance amount.

explicit by directing that periods of disability established before age thirty-one for claimants who met only the special status requirements be disregarded both for determining eligible status in subsequent periods of disability and the level of benefits. When the cited POMS sections are applied to Raymond's case, her earnings during her first period of disability, before she was thirty-one, are not counted in calculating the level of her benefits for her second period of disability, which began after she was thirty-one.

Both parties cite <u>Jernigan v. Chater</u>, 973 F. Supp. 534 (D. Md. 1997).[3] In that case, the computation of Jernigan's primary insurance amount under the AMW method provided by 42 U.S.C.A. § 415 required that earnings during his prior period of disability be excluded. <u>Id.</u> at 536. The parties agreed that the savings clause, 42 U.S.C.A. § 420, prevented the exclusion of Jernigan's previous earnings in computing his benefits. <u>Id.</u> However, in order to be entitled to benefits calculated under the AMW method at all, Jernigan had to exclude the time within his prior period of disability in the calculation of his insured status. <u>Id.</u>

The Commissioner asserted the "all or nothing" rule to

---

[3]<u>Jernigan</u> is the only case found by the parties and the court which addresses the "all or nothing" interpretation of § 420.

9

require that Jernigan's period of disability must either be included for all purposes or excluded for all purposes under § 420. Id. at 537. The court held that the "all or nothing" interpretation of § 420 was appropriate in that case, but that it also operated in reverse so that any provision that did not relate to a period of disability was not affected. Id. The court further held that because 42 U.S.C.A. § 416(i)(1), which qualified Jernigan to receive benefits under the AMW method, merely defined the term "disability," that provision did not relate to a period of disability as referenced in § 420. Id. at 538. As a result, the court held that both the definitional section, excluding a prior period of disability for purposes of determining eligibility, and the benefits section, including earnings during a prior period of disability, could be applied simultaneously without violating the "all or nothing" rule. Id.

Unlike the circumstances in Jernigan, here the parties agree that no regulatory or statutory provision in the social security framework addresses the question of whether earnings from Raymond's prior period of disability may be used in calculating her benefits for her second period of disability. The savings statute, by its own terms, controls only the application of provisions of the social security subchapter. Since the issue presented here is not whether a provision should be applied, or

10

not, relating to a period of disability, the savings statute does apply.

Instead, the question presented in this case is whether the cited POMS sections are a reasonable interpretation and implementation of the social security statutes and regulations and are therefore entitled to deference. Raymond argues that the "all or nothing" rule of the POMS sections violates the intent of the Social Security Act to provide the highest possible level of benefits as demonstrated by the savings statute, § 420, and 20 C.F.R. § 404.130(f). Although the Commissioner interprets § 420, in an "all or nothing fashion," the plain intent of the statute is to avoid provisions that would unnecessarily reduce an applicant's monthly benefit.

Section 404.130(f) states that the SSA "will count all the quarters in the prior period of disability established for [the claimant] if by doing so [the claimant] would be entitled to benefits or the amount of the benefit would be larger." The Commissioner contends that the plain meaning of § 404.130(f) must be read in the context of the "all or nothing" rule imposed by § 420. The Commissioner cites no authority for her reasoning, however. Contrary to the Commissioner's interpretation, it appears that § 404.130(f) was intended to permit combining

11

earnings to achieve a higher benefit level.[4]

Therefore, based on the minimal record and argumentation presented in this case, the social security framework appears to favor combining earnings from prior periods of disability in the benefits calculation, regardless of whether that time was also considered for other purposes, if that will result in higher benefits. The Commissioner's contrary interpretation is not persuasive.

Since the POMS sections, which prevent combining Raymond's earnings in both periods of disability, are contrary to the purpose and intent of the social security framework, they are not entitled to deference and lack the force of law. Absent the POMS sections, the parties agree that no statute or regulation requires that the prior earnings be disregarded, and therefore, there is no legal basis for the Commissioner's calculation of Raymond's benefits. The Commissioner must recalculate Raymond's benefits, applying appropriate statutes and regulations without reference to POMS sections RS 00301.147 and RS 00605.220.

---

[4]In addition, while 42 U.S.C.A. § 415(b)(2)(B)(ii) and (iii) exclude years entirely included in a period of disability from benefit computation years, 20 C.F.R. § 404.211(a)(2), in defining "computation base years," states that years within prior periods of disability will be included if that would make the primary insurance amount higher. Nothing in § 404.211 suggests an "all or nothing" rule limits its application.

12

<u>Conclusion</u>

For the foregoing reasons, the claimant's motion to reverse (document no. 12) is granted, and the Commissioner's motion to affirm (document no. 15) is denied.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

May 23, 2002

cc:  Alan Linder, Esquire
     David L. Broderick, Esquire